ALMA ALBRECHT, ADMINISTRATRIX, APPELLEE, V. GEORGE MORRIS ET AL., APPELLANTS.

FILED MAY 13, 1912. No. 16,677.

1. **Negligence: SUFFICIENCY OF EVIDENCE.** Evidence examined, as indicated in the opinion, and found sufficient to support the finding that the injuries of the deceased were caused in the manner alleged in the petition.

2. ———: ———: CUSTOM. A custom of leaving trenches uncovered when located in inclosed premises would not constitute a complete defense against an allegation of negligence in so doing, if the conditions and circumstances were such as to cause a reasonably prudent and cautious man to believe that human life or safety were endangered thereby.

3. **Appeal: SUFFICIENCY OF EVIDENCE.** When the evidence is substantially conflicting, this court cannot set aside the finding of the jury. Evidence examined and found sufficient to support the

finding that the injuries complained of were the proximate cause of death.

4. **Negligence**: ACTION FOR DEATH: INSTRUCTIONS: HARMLESS ERROR. In an action to recover damages for negligence causing the death of plaintiff's intestate, it is erroneous to instruct the jury that "by contributory negligence is meant negligence on the part of plaintiff." But if the jury is also told that contributory negligence on the part of the deceased would prevent a recovery, and it appears from the whole charge that the word "plaintiff" was inadvertently used, and that the jury must so have considered it, the error will be regarded as without prejudice to the defendant.

5. ———: ———: ———: ———. In such action it is erroneous to instruct the jury that if "the injury to the deceased was caused by the negligence of the defendants, and that such injury caused *or contributed* to the death of the deceased, then you should find for the plaintiff." But if the jury are told that plaintiff cannot recover unless such injuries were the proximate cause of the death, and it appears from the instructions that the jury must have understood that plaintiff could not recover unless the injuries contributed in such a degree as to be in fact the proximate cause of the death of the deceased, the error will be disregarded.

6. ———: ———: PRESUMPTIONS. If a person is killed through the negligence of another, and there is no evidence as to negligence or due care on the part of the deceased, the law presumes that the deceased was exercising reasonable and ordinary care at the time of his injury with a view to his safety.

7. **Evidence**: COMPETENCY. A physician and surgeon, who attended professionally an injured person who afterwards died of his injuries, may testify to the condition of the deceased as disclosed by his professional examination immediately after the injury, and to statements of deceased as to pain suffered by him and necessary to the determination of the location and extent of his injuries.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Montgomery & Hall,* for apellants.

*W. W. Slabaugh* and *J. W. Battin, contra.*

SEDGWICK, J.

The plaintiff, as administratrix of the estate of her de-

ceased husband, Adolph Albrecht, prosecuted this action in the district court for Douglas county to recover damages for the death of the deceased, caused, as she alleges, by the negligence of these defendants. The defendants have appealed from the judgment in her favor.

1. In May, 1908, the plaintiff and her husband were living in a rented house on Nineteenth street in the city of Omaha. The defendant Cardell, in the employment and under the direction of the other defendants, dug trenches for water pipes upon the premises, and, as it is alleged, carelessly uncovered one of these trenches, into which the deceased fell and received injuries which disabled him for several months, and which injuries finally caused his death. It is contended that the defendants were under no obligation to cover these trenches, since they were on the inclosed premises of the deceased and it is not customary to cover such trenches under those circumstances; and, further, that there is not sufficient proof that the deceased received his injuries by falling into the trench, or that the injuries complained of were the cause of his death. There was another residence about ten feet distant from that of the deceased, and a narrow walk along the side of the deceased's residence. Along the side of this walk the trench was dug in three parts, each part being 6 or 8 feet in length, about 5 or 6 feet in depth, and from 16 to 24 inches in width. These openings were several feet apart, the intention being to tunnel from one to the other for the water pipes. On Friday evening at the close of the day's work Mr. Cardell was about to leave these trenches open, and the plaintiff insisted that they should be covered; that on account of the location of the walks there would be danger of people falling into them. Mr. Cardell thereupon covered them with boards and planks, one of them being covered with two planks each a foot in width. On the next evening, while the deceased and this plaintiff were away from home, Mr. Cardell finished another part of the trench in the street, and, considering that it should be guarded, he removed one of the planks

for that purpose, leaving a part of the trench in the yard covered with one plank only, which he says he placed in the center of the trench, leaving a small opening on each side of the plank.   The deceased, who was a man about 78 years of age, was accustomed to return home at about 5 or 6 o'clock in the evening, and on that evening the plaintiff returned home at about 10 o'clock.   She testifies that there was a storm of wind and rain during the evening, which had ceased at the time she arrived at home, and that she found the deceased in the house lying upon a couch in his shirt sleeves and slippers, and suffering extreme pain from injuries recently received.   She was not allowed to testify as to his statements in regard to the cause of his injuries, but she testified that his leg was bruised from his foot to his knee, and his knee was badly bruised and painful, and that one of his shoulders was injured and that he was suffering great pain in other parts of his body; that there were marks on the side of the trench that had been left covered with one plank only, indicating that some one had fallen in, and that deceased's foot and clothing were discolored with clay similar to that composing the side of the trench; that his coat and umbrella were dry, indicating that he had not been in the rain.   She also testified that there was a window in their house just opposite this trench, and that when she went away from home early in the afternoon she closed the window, but left the outside blinds open, and that when she returned that night she found the blinds closed; the theory of the plaintiff being that the deceased, on the approach of the storm, attempted to close the outside blinds, and in doing so fell into the partly uncovered trench.   The defendants say that this evidence is insufficient to justify the jury in finding that the deceased fell into the trench.   Some of this testimony by the plaintiff was contradicted by other witnesses.   She was, however, examined and cross-examined at great length, and appears to be a candid and reliable witness.   It was for the jury to determine as to the truth of her statements, and we must therefore, for the purpose of this

objection, consider the circumstances as testified to by her. If, therefore, we consider these circumstances as fully established by her testimony, we think they are sufficient to justify the jury in finding that the injuries of the deceased were caused by falling into this trench, as alleged.

2. The contention that the defendants were not negligent in partly uncovering this trench cannot be sustained. If they had established a custom of leaving such trenches open in inclosed premises, still, considering the surroundings and the possible danger of accidents, it would be for the jury to determine whether such a custom was reasonable under all the circumstances; and, if the defendants had been warned that there would be danger in leaving the trench uncovered, it would be for the jury to determine whether it was reasonable and the exercise of due care to remove this covering in the evening and without any warning to the occupants of the premises.

3. The contention that these injuries were not the cause of the death of the deceased is likewise untenable. Dr. Walker was called very soon after the injuries, and testified fully to the condition of the deceased and to the extent of his injuries; that the deceased was confined to his room for some time, and afterwards for a short time walked with much difficulty, and that his condition continually grew more serious until the time of his death, which the doctor testified was due primarily to the injuries complained of. When the evidence upon the material issues of the case is substantially conflicting, we cannot disturb the verdict of the jury.

4. The court instructed the jury: "By contributory negligence is meant negligence on the part of plaintiff directly contributing to the cause of his injury." The objection to this instruction is that it excludes the idea of contributory negligence on the part of the deceased. If this were the only instruction given on the subject of his contributory negligence, the objection would be serious. However, the court, in at least three other instructions, plainly instructed the jury that contributory negligence

on the part of the deceased would prevent recovery, and in the instruction complained of the use of the masculine pronoun indicates that the word "plaintiff" was inadvertently inserted in the instruction. Considering all of the instructions together, it does not appear that the jury were misled in this respect.

5. The court also instructed the jury as follows: "The jury are instructed that if you find from the evidence that the injury to the deceased was caused by the negligence of the defendants, and that such injury caused *or contributed to* the death of the deceased, then you should find for the plaintiff, provided you find from the evidence that the deceased was not guilty of negligence which contributed to his injury." Again, it may be said that, if this instruction was the only one upon this point, the jury might have been misled. It is not sufficient that the negligence of the defendants "contributed to the death of the deceased." Such negligence must be the proximate cause of the injuries which caused the death. It is an imperative rule of law that an erroneous instruction upon a material issue cannot be corrected by a contrary instruction inconsistent with the first. The instruction complained of does not inform the jury to what extent the negligence of the defendants must contribute to the death of the deceased. It is therefore not necessarily inconsistent with the several other instructions given by the court in which the jury were plainly told that the negligence of the defendants must be the proximate cause of the injuries resulting in the death of the deceased. The instructions given by the court were full and comprehensive upon this point, as well as upon the other issues involved, and we cannot say that the jury were misled by the language of this instruction complained of.

6. The court instructed the jury: "You are instructed that where a person is injured through the negligence of another, and such injured person thereafter dies, and there is no witness to the happening of the injury, the law presumes that such injured person was exercising reasonable

and ordinary care at the time of his injury with a view to his safety." The objection to this instruction is that it left the jury in doubt whether "the presumption of due care was conclusive or merely evidentiary." It would have been quite proper to inform the jury that this presumption was not conclusive if there was other evidence bearing upon that question. The jury must determine whether the circumstances and evidence tend to show contributory negligence on the part of the deceased, and only indulge in the presumption which the law raises in the absence of other evidence. The record does not show that the court was requested to so modify or explain the instruction, and the instruction as given is technically correct.

7. The court gave the jury the following instruction: "You are instructed that certain evidence was introduced by certain witnesses as to exclamations and statements of the deceased as to his physical condition. Such elements were introduced and received for the purpose only of showing his physical condition and pain and suffering at the time of such exclamations and statements, and as pertaining to the question whether or not the injuries complained of caused or were proximate to the death of the deceased." The objection urged is that this instruction allows the jury to consider the "exclamations and statements" of the deceased "as pertaining to the vital question in the case, to wit, the proximate cause of his death." There seems to be no ground for this objection. All statements of the deceased in regard to the cause of the accident were rigidly excluded by the court. In his examination by the physician the deceased made statements as to the location of the pain which he suffered, and similar statements which were admitted as a part of the physical examination made by the physician. If these tended to show the extent of his injuries, they would pertain to the question whether such injuries were of such a nature and degree as to be regarded as the proximate cause of his

death.    The instruction was necessary in the interest of the defendants, and was not prejudicially erroneous. The judgment of the district court is

AFFIRMED.